FILED

2025 Nov-03  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **JOSHUA FREEMAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 6:25-cv-388-ACA** |
| | } | |
| **WALKER COUNTY SHERIFF'S DEPARTMENT, et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Joshua Freeman and his then-wife were in a domestic altercation at the duo's former home. Mr. Freeman temporarily possessed the home during the couple's divorce proceedings. After his then-wife entered the home and confronted Mr. Freeman, his acquaintance—who was present on the premises—called 911 to report the incident. Members of the Walker County Sheriff's Department responded to the 911 call and ultimately arrested Mr. Freeman.

Mr. Freeman now sues three Walker County Sheriff's Department deputies: Deputy James Handley, Sergeant Slade Reeves, and Deputy Joshua Richardson (the "deputies"), in addition to Walker County, Alabama, and the Walker County Sheriff's Department. (Doc. 11). He alleges state law claims for outrage ("Count One"), negligent hiring, training, and supervision ("Count Two"), false arrest and

imprisonment ("Count Three"), and malicious prosecution ("Count Five"). He brings two federal claims under 42 U.S.C. § 1983 for false arrest and imprisonment ("Count Three") and First Amendment violations ("Count Four").

All defendants move to dismiss. Mr. Freeman concedes that dismissal is appropriate against the Walker County Sheriff's Department (doc. 21), so the court **GRANTS** the Sheriff Department's motion (doc. 12) and **DISMISSES** all claims against it **WITH PREJUDICE** without further discussion. For the reasons stated below, the court **GRANTS** Walker County's motion and **DISMISSES** all claims against it **WITH PREJUDICE**. (Doc. 14). And the court **GRANTS** Deputy Handley, Sergeant Reeves, and Deputy Richardson's motion and **DISMISSES** all state law claims against them **WITH PREJUDICE** and the federal claims in Counts Three and Four **WITHOUT PREJUDICE**. (Doc. 16).

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

In 2023, Mr. Freeman was going through a divorce with his then-wife. (Doc. 11 ¶ 7). The two agreed—and the state court accepted—that Mr. Freeman temporarily possess the home where the two had lived. (*Id.* ¶ 8). Accordingly, Mr. Freeman's then-wife lived in a different city. (*Id.*). On February 5, 2023,

Mr. Freeman was at the home with an acquaintance. (*Id.* ¶ 9). Mr. Freeman's then-wife arrived at the home, where she tried to "invade" the home and "commit violence" against Mr. Freeman and his acquaintance. (Doc. 11 ¶ 9). Mr. Freeman's acquaintance recorded the altercation and called 911. (*Id.* ¶¶ 9–10).

Deputy Handley, Sergeant Reeves, and Deputy Richardson responded to the call. (*Id.* ¶ 10). On scene, they called Mr. Freeman's then-wife's attorney. (*Id.* ¶ 11). The attorney incorrectly told them that Mr. Freeman's then-wife possessed the home. (Doc. 11 ¶ 11). The deputies never called Mr. Freeman's attorney to verify the information. (*Id.* ¶¶ 11–12). As a result, the deputies arrested Mr. Freeman and charged him with third-degree domestic violence. (*Id.* ¶ 13). Mr. Freeman was in custody for roughly twenty-four hours. (*Id.* ¶ 21). Ultimately, officials dropped the criminal charges against Mr. Freeman (doc. 11 ¶ 16), but while the charges were pending, Mr. Freeman, a police officer with the Homewood Police Department, could not conduct routine patrols or seek overtime opportunities because his supervisors placed him on restricted duty (*id.* ¶ 14).

## II.  DISCUSSION

All defendants move to dismiss Mr. Freeman's complaint under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. Walker County

#### a. State Claims

Mr. Freeman brings three state law claims based on *respondeat superior* against Walker County—Counts One, Three, and Five. He alleges Walker County is directly liable under Count Two for negligent training, hiring, and supervision.

Walker County argues that it cannot be liable for the actions of deputy sheriffs because they are not county employees. (Doc. 15 at 6–10). Under Alabama law, both sheriffs and deputy sheriffs are "executive officers of the State," not county employees. *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1239 (Ala. 2006). District attorneys are also state employees. *Hooks v. Hitt*, 539 So. 2d 157, 159 (Ala. 1988). So a county is not liable for their actions. *See id.* at 160; *see also Ex parte Sumter Cnty.*, 953 So. 2d at 1239–40. Mr. Freeman concedes that Walker County cannot be liable for the actions of a district attorney. (Doc. 23 at 2 n.1).

Mr. Freeman, however, argues there is an exception to these general rules for Walker County deputy sheriffs. (*Id.* at 2–4). He contends that an Alabama constitutional amendment subjects deputy sheriffs to the authority of the Walker County Civil Service Board and thus makes the deputy sheriffs employees of Walker

County. That amendment subjects "all employees of the Office of the Sheriff of Walker County" to the "authority of the Walker County Civil Service Board." Ala. Const. § 64-8.20. Mr. Freeman then points to the Board's enacting legislation, which prescribes that the Board provides for "employees" of Walker County. (*See* doc. 25 at 7–14); 1969 Ala. Acts. 263–64 §§ 1–3. Accordingly, Mr. Freeman argues, because the Board covers only Walker County employees and deputy sheriffs are now subject to the Board, Walker County deputy sheriffs must be county employees.

Mr. Freeman's theory fails for three reasons. First, the text of neither the constitutional amendment nor the Board's enacting legislation makes deputy sheriffs employees of Walker County. The legislation applies to "employees in the service of the county." 1969 Ala. Acts. 264 § 3. Because Walker County deputy sheriffs are not county employees, they did not fall under the scope of the Board. The constitutional amendment then specifically subjected Walker County deputy sheriffs to the Board's authority. So the Board has authority over both Walker County employees and employees of the Sheriff's Office, but that change does not merge the two distinct groups and make Sheriff's Office employees county employees. Second, the Board is a distinct entity from Walker County. So subjecting deputy sheriffs to the authority of the Board could not make them Walker County employees. Third, Alabama counties are creatures of statute and have only the power granted to them by the legislature. *Alexander v. State ex rel. Carver*, 150 So. 2d 204, 206 (Ala. 1963). The

legislature has not expressly delegated Walker County the power to employ deputy sheriffs, and thus it has no authority to do so. *See Ex parte Sumter Cnty.*, 953 So. 2d at 1238. Accordingly, the claims based on *respondeat superior* fail.

Count Two fails for the same reason. To state a claim for negligent hiring, training, or supervision under Alabama law, a plaintiff must show that "(1) the employer hired, trained, or supervised an employee with an incompetency; (2) the employer knew of the incompetency or would have learned of it by exercising due care; and (3) the employee caused the plaintiff harm due to the incompetency." *Motley v. Express Servs., Inc.*, 386 So. 3d 766, 772–73 (Ala. 2023). Deputy sheriffs are not county employees, and Walker County does not hire, train, or supervise them. *Ex parte Sumter Cnty.*, 953 So. 2d at 1238 ("[A] county commission does not have the authority, or the responsibility, to promulgate policies and work rules for employees of the sheriff's office, nor does a county commission have authority over law-enforcement policies or the training, supervision, hiring, or firing of the sheriff's employees.").

Accordingly, the court **GRANTS** Walker County's motion and **DISMISSES** the state law claims in Counts One, Two, Three, and Five against Walker County **WITH PREJUDICE**.

### b. Federal Claims

Mr. Freeman also contends Walker County is subject to *respondeat superior* liability under § 1983 for Counts Three and Four. (Doc. 11 at 7–9). But a local government cannot be liable under § 1983 based solely on *respondeat superior*. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Rather, a "county is liable under § 1983 only for acts for which the county is actually responsible." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (cleaned up). Accordingly, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc). The "local government must have power in an area in order to be held liable for an official's acts in that area." *Id.* (quotation marks omitted).

As outlined above, under Alabama law, a county has only the power granted to it by statute. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 790 (1997). And no statute gives a county authority over law enforcement. *Id.* So "sheriffs are given complete authority to enforce the state criminal law in their counties," and counties "cannot instruct the sheriff" how to carry out law enforcement duties. *Id.*

Counts Three and Four allege constitutional violations flowing from law enforcement activities: the deputies' investigation and arrest. (Doc. 11 ¶¶ 31–40). Because of Alabama's constitutional and statutory structure, Mr. Freeman cannot

state a claim against Walker County. *See McMillian*, 520 U.S. at 790–91. To the extent that Mr. Freeman argues that the Alabama constitutional amendment alters the § 1983 analysis, the court disagrees for the same reasons listed above. The court therefore **GRANTS** Walker County's motion as to the federal claims and **DISMISSES** Counts Three and Four against Walker County **WITH PREJUDICE**.

### 2. The Individual Deputies

#### a. State Claims

The deputies move to dismiss all state law claims against them. (Doc. 16). According to them, the court does not have jurisdiction over the state law claims because they are immune under § 14 of the Alabama Constitution. (Doc. 17 at 5). But state law cannot define the jurisdictional boundaries of federal courts. *Green v. Graham*, 906 F.3d 955, 964 (11th Cir. 2018). Although this is not a jurisdictional bar, the deputies argue that they are entitled to state immunity, an argument of which Mr. Freeman responds does not apply and about which the court can resolve pursuant to Federal Rule of Civil Procedure 12(b)(6).

Sheriffs and their deputies are immune from claims seeking monetary damages in their official capacity. Ala. Const. Art. I, § 14; *see also Parker v. Amerson*, 519 So. 2d 442, 442–43 (Ala. 1987). In addition, they are generally immune from claims seeking monetary damages made against them in their individual capacity that arise "out of the execution of the duties of their office." *Ex parte Underwood*, -- So. 3d --, 2025 WL 1776225, at *2, *4 (Ala. June 27, 2025).

Here, Mr. Freeman alleges that the three deputies responded to a 911 call, investigated on the scene, and made an arrest. (Doc. 11 ¶¶ 10–13). And Mr. Freeman concedes the deputies acted within the line and scope of their official duties as deputy sheriffs when engaged in these functions. (*Id.* ¶¶ 6, 34).

But Mr. Freeman argues that the deputies "deviated from the normal scope" of their duties by calling Mr. Freeman's ex-wife's attorney to determine who possessed the home. (Doc. 22 at 4). He contends the court should find the deputies are not entitled to absolute immunity because their actions went beyond their authority. (*Id.* at 3–4). The deputies' duties included investigating the allegations, and the deputies called Mr. Freeman's then-wife's attorney. Mr. Freeman contends that they should have called his attorney. (*Id.* at 4). But this argument has been foreclosed by *Ex parte Underwood*. *See* 2025 WL 1776225, at *4.

Because the deputies acted within the scope of their duties, they are immune from suit for monetary damages under § 14. Accordingly, Sergeant Slade, Deputy Handley, and Deputy Richardson are entitled to § 14 immunity. *See id.* The court **GRANTS** the deputies' motion and **DISMISSES** all state claims against them **WITH PREJUDICE**.

b. *Federal Claims*

The deputies also move to dismiss the federal claims—Counts Three and Four—against them based on qualified immunity.[1] (Doc. 17 at 12–25). Qualified immunity "protects an officer unless at the time of the officer's supposedly wrongful act the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quotation marks omitted). Accordingly, only "the plainly incompetent" or those who knowingly violate federal law are not entitled to qualified immunity. *Id.*

Qualified immunity involves a burden-shifting analysis. First, the officer asserting qualified immunity must demonstrate that "he acted within his discretionary authority." *Id.* (citation and quotation marks omitted). If the officer presents sufficient evidence to support this contention, the burden shifts to the plaintiff to show that the officer's actions violated his constitutional rights and that the right was clearly established at the time of the alleged violation. *Id.*

To satisfy their burden, the deputies must present sufficient evidence that establishes their acts were "within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir.

---

[1] The deputies construe Count Five as both a state and federal claim for malicious prosecution. (Doc. 17 at 5 n.2). But the complaint expressly notes that Count Five is under state law only. (Doc. 11 at 9).

2025). They argue that they acted within the perimeter of their duties to "ferret out crime" by responding to the 911 call. (Doc. 17 at 12). Mr. Freeman does not dispute this and allocates only one cursory sentence of his brief to argue that the deputies did not act within the scope of their discretionary authority and offers no legal or factual analysis. (*See* doc. 22 at 7–8). A mere passing reference is insufficient to raise an argument. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014). Moreover, the deputies acted within their discretionary authority for the same reasons that the court finds they acted within the scope of authority for § 14 immunity for state law claims. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Because the deputies acted within their discretionary authority, it is Mr. Freeman's burden to prove the deputies violated clearly established law.

Mr. Freeman can use three methods to satisfy that burden. *Powell*, 25 F.4th at 920–21. First, he may point to a materially similar decision from the Eleventh Circuit, United States Supreme Court, or the Alabama Supreme Court. *See id.* at 920. Second, he may rely on "broad statements of principle in case law [that] are not tied to particularized facts" but that nevertheless put the deputies on notice. *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (citation omitted). Third, he may argue that the deputies' actions "so obviously violate the constitution that prior case law is unnecessary." *Powell*, 25 F.4th at 920 (cleaned up).

11

### i.   Count Three

Mr. Freeman labels Count Three as "False Arrest and Imprisonment." (Doc. 11 at 7). But he also claims the deputies violated the First and Fourteenth Amendments. (*Id.* ¶ 37).

First, Mr. Freeman contends the deputies violated the First Amendment. (Doc. 11 ¶ 37). The First Amendment protects two forms of association: intimate and expressive. *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994). Intimate association is "the freedom to choose to enter into and maintain certain intimate human relationships." *Id.* at 1563. Expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment." *Id.* Mr. Freeman's complaint does not specify which form of association the deputies violated; he argues only the deputies did not call his attorney because his attorney is not a "favored attorney." (Doc. 11 ¶ 12; doc. 22 at 7). The court will construe his claim as an intimate association claim.

Even assuming the complaint sufficiently pleads a First Amendment violation, Mr. Freeman does not meet his burden to show the violation was clearly established law at this time. Mr. Freeman only cursorily notes he is entitled "to have counsel of his choosing." (*Id.* at 8). But that statement defines clearly established law at too high of a level. *See District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018); *see*

*also Gaines v. Wardynski*, 871 F.3d 1203, 1213–14 (11th Cir. 2017). Thus, the deputies are entitled to qualified immunity for any First Amendment claim.

Second, Mr. Freeman first argues the deputies violated the Fourth Amendment because they lacked probable cause to arrest him for third-degree domestic violence. (Doc. 11 ¶ 32). In the qualified immunity context, the deputies need only "arguable probable cause," meaning "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998). To determine whether the deputies had arguable probable cause, the court considers "the elements of the alleged crime and the operative fact pattern." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). The deputies are entitled to qualified immunity if they had arguable probable cause to arrest Mr. Freeman for any crime. *See Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023).

Under Alabama law, a person commits third-degree domestic violence when he "commits . . . the crime of criminal trespass in the third degree . . . and the victim is a current or former spouse . . . ." Ala. Code. § 13A-6-132(a)(1). A person commits third-degree criminal trespass when "he knowingly enters or remains unlawfully in or upon premises." Ala. Code § 13A-7-4(a). Because Mr. Freeman pleaded the domestic dispute was between him and his then-wife (doc. 11 ¶¶ 8–14), he must show that "no reasonable officer" could have believed that they had probable cause

that Mr. Freeman was trespassing. *See Jones v. Cannon*, 174 F.3d 1271, 1283–84 (11th Cir. 1999).

Here, the deputies had arguable probable cause to believe Mr. Freeman was trespassing. According to the complaint, the deputies responded to a 911 call, arrived on scene, contacted an attorney who told the deputies that the house belonged to his then-wife, and then arrested Mr. Freeman. (Doc. 11 ¶¶ 10–13). The deputies arrested Mr. Freeman only after they spoke to an attorney who told them Mr. Freeman did not possess the home. Mr. Freeman pleaded no facts that would indicate the deputies had a reason not to believe the attorney, who is an officer of the court. Accordingly, even construing these facts in the light most favorable to Mr. Freeman, the deputies had arguable probable cause because a reasonable law enforcement official could have believed there was probable cause that Mr. Freeman trespassed. *See id.* at 1283. Although the attorney seemingly misrepresented the facts, "the Fourth Amendment does not require a perfect investigation before an arrest is made or a charge is brought." *Harris v. Hixon*, 102 F.4th 1120, 1125 (11th Cir. 2024). A deputy does not have to rule out every possibility before making an arrest. *See Wesby*, 583 U.S. at 61 ("[P]robable cause does not require officers to rule out a suspect's innocent explanation[.]").

Moreover, Mr. Freeman does not present any case or legal principle dictates otherwise. He does not point to—nor has the court found—any factually similar case

from the Eleventh Circuit, the United States Supreme Court, or the Alabama Supreme Court. (*See* doc. 22 at 6–9). Nor does Mr. Freeman argue the deputies' conduct so obviously violated the Constitution that no prior case law is needed. (*See id.*).

Mr. Freeman, instead, relies on broad principles of law: (1) that citizens should be "free from an arrest without probable cause" and "secure in [their] own home" (doc. 22 at 6, 8) and (2) that a search or seizure without a warrant in Mr. Freeman's home is per se unreasonable (*id.* at 6). But these principles "define clearly established law at a high level of generality," which the Supreme Court has repeatedly instructed against. *See id.* at 63–64. "In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which the particular officer was confronted constituted probable cause." *Id.* at 64 (quotation marks omitted). As explained, the circumstances here indicated that the deputies had arguable probable cause to believe Mr. Freeman trespassed.

Third, any claim for false imprisonment under the Fourteenth Amendment also fails. "A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). To show a due process violation, a plaintiff must show "the defendant acted with deliberate indifference in violating the plaintiff's right to be free from continued detention after the defendant

knew or should have known that the detainee was entitled to release." *May v. City of Nahunta*, 846 F.3d 1320, 1329 (11th Cir. 2017). "If an officer has arguable probable cause to seize an individual, that finding may defeat a claim of deliberate indifference." *Helm v. Rainbow City*, 989 F.3d 1265, 1279 (11th Cir. 2021). Mr. Freeman cursorily alleges the actions were "in deliberate indifference," but he pleaded no facts to support that legal conclusion. (Doc. 11 ¶ 31–37). Accordingly, because the deputies had arguable probable cause, Mr. Freeman's false imprisonment claim fails. *See id.*; *May*, 846 F.3d at 1329.

Because Mr. Freeman pleaded no clearly established constitutional violation, the deputies are entitled to qualified immunity on Count Three. Accordingly, the court **GRANTS** their motion and **DISMISSES** Count Three **WITHOUT PREJUDICE**.

### ii. Count Four

Mr. Freeman labels Count Four as "First Amendment Violation" but also alleges violations of the Fifth and Sixth Amendments. (Doc. 11 at 8). The court will address each in turn.

Mr. Freeman contends the deputies violated his First Amendment right to association.[2] (Doc. 21 ¶ 38). The court rejects this argument for the reasons stated above.

Mr. Freeman next contends the deputies violated his right to counsel under the Fifth Amendment by not calling his attorney. The right to counsel under the Fifth Amendment protects an individual from self-incrimination by requiring police deputies to warn an individual that he is entitled to counsel before custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 472–73 (1966). Mr. Freeman did not plead any *Miranda* violation, and a *Miranda* violation is not a cause of action under § 1983. *Chavez v. Martinez*, 538 U.S. 760, 772–73 (2003). This claim also fails.

Mr. Freeman next alleges a violation of his Sixth Amendment right to counsel. (Doc. 11 ¶ 38). The Sixth Amendment right to counsel attaches only at "critical stages" of a criminal prosecution, which includes "trial-like confrontations." *Mills v. Hamm*, 102 F.4th 1245, 1249 (11th Cir. 2024). Mr. Freeman alleges that the deputies violated his right by not contacting his attorney before arresting him, which is not a

---

[2] Mr. Freeman also contends the deputies violated § 4 of the Alabama Constitution, which mimics the First Amendment, in violation of § 1983. (Doc. 11 ¶¶ 38–39). A state constitutional provision cannot be a basis for a § 1983 lawsuit. *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 177–78 (2023).

critical stage of the prosecution. (Doc. 11 ¶¶ 10–13, 38). So Mr. Freeman did not plead a Sixth Amendment violation. *See id.*

Because Mr. Freeman does not plead any clearly established constitutional violation, the court **GRANTS** the deputies' motion and **DISMISSES** Count Four **WITHOUT PREJUDICE**.

## III.    CONCLUSION

For the reasons stated above, the court **GRANTS** the Walker County Sheriff Department's motion and **DISMISSES** all claims against it **WITH PREJUDICE**. (Doc. 12). The court **GRANTS** Walker County's motion and **DISMISSES** all claims against it **WITH PREJUDICE**. (Doc. 14). And the court **GRANTS** Deputy Handley, Sergeant Reeves, and Deputy Richardson's motion and **DISMISSES** all state law claims against them **WITH PREJUDICE** and the federal claims in Counts Three and Four **WITHOUT PREJUDICE**. (Doc. 16).

**DONE** and **ORDERED** this November 3, 2025**.**

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE